In the Matter of Ronald A. MARTIN, Debtor.

**FIRST FEDERATED LIFE INSURANCE CO., Plaintiff,**

v.

Ronald A. MARTIN, Defendant.

**Dennis E. QUAID, as Trustee of the Estate of Ronald A. Martin, Plaintiff,**

v.

Ronald A. MARTIN, Defendant.

**Bankruptcy Nos. 80 B 09244, 80 A 2134 and 80 A 2133.**

United States Bankruptcy Court, N. D. Illinois, E. D.

Sept. 3, 1981.

Dennis E. Quaid, Chicago, Ill., Trustee.

David N. Missner, Schwartz, Cooper, Kolb & Gaynor, Chicago, Ill., for debtor.

Louis W. Levit, Chicago, Ill., for First Federated Life Insurance Co.

## FINDINGS OF FACT AND ORDER

RICHARD L. MERRICK, Bankruptcy Judge.

This cause came on for trial as a consolidation of adversary proceedings objecting to the discharge of the debtor, contesting the dischargeability of the debtor's debt to First Federated Life Insurance Co. (hereinafter "First Federated") and allegations that assets of the debtor were not disclosed in the schedules which were a part of his petition and, conversely, were concealed by being placed in the name of the debtor's father, Alex J. Martin. The property in question is a condominium apartment situated at 4601 West Touhy Avenue, Lincolnwood, Illinois, a residential suburb northwest of Chicago. This property was purchased in 1976 for $67,500 of which $15,000 was derived from a cash down payment and the balance from proceeds of a mortgage loan from Cook County Federal Savings and Loan Association, of which the note was signed by Alex J. Martin and Josephine Martin, his wife. Title to the property is held by American National Bank and Trust Company of Chicago under an Illinois Land Trust of which the beneficial owner is Alex J. Martin.

It generally has been assumed by the parties that the property in question has a value substantially in excess of the outstanding mortgage debt, and that if Dennis E. Quaid, the Trustee (hereinafter "Quaid", or "the Trustee") can establish ownership of it that he will be able to generate substantial funds for the benefit of creditors.

At the close of the plaintiffs' case the defendant moved for judgment. The plaintiff's counsel argued that a lower standard of proof or lesser preponderance of evidence, is required then than at the close of an entire case. The logic of this theory was not explained nor were authorities cited, but, apparently to save the time and expense of argument and briefs, the defendant then rested, so that the motion becomes one for judgment at the close of the entire case.

The bulk of the plaintiff's case was the testimony, as adverse witnesses, of the Martins, father and son. Seldom has this Court observed witnesses whose credibility was lower. It was not so much that they appeared to be lying as it was that they seemed to be indifferent to the truth. They were both extremely facile witnesses who would be difficult to impeach on the ground of inconsistent prior testimony because both the present and earlier statements were so vague, qualified and general that direct contradictions are unlikely. Where a direct conflict appeared to be impending, it would be avoided by a lapse of memory.

For purposes of impeachment the plaintiffs sought to introduce evidence of a criminal conviction of Ronald A. Martin in 1968, which was not admitted for reasons discussed below. It would not have affected this trier of fact in any event, because the Court already had concluded that both Martins would testify to whatever version of facts seemed at the moment to favor the financial interest of Ronald. Less credibility hath no man than this.

Both Martins testified that they, particularly the father, frequently conducted substantial financial transactions through the use of cash, generally $100 bills. They did not discuss why they used this method of dealing, but it is the experience of the Court that persons do not engage in large cash transactions unless they are trying to hide something from somebody. Sometimes they are covering up a crime not related to taxation, frequently they are disguising income, occasionally they are defrauding creditors or co-owners, or concealing assets from their wives. The use of cash does not, of itself, establish that any one of the fore-

going reasons would be the controlling factor in a given case; that must be established by extrinsic evidence.

The testimony of both Martins with respect to the purchase of the Touhy Avenue condominium is as follows:

(a) A $15,000 down payment was made consisting of three separate partial payments,

(1) On January 30, 1976, Alex J. Martin drew a check on the Bank of Lincolnwood in the amount of $6,750, representing 10% of the purchase price, payable to Katz, Weiss Construction Company, the developer;

(2) About May 19, 1976 a similar check for $3,375 was issued, and

(3) In late August or early September, 1976, a similar check in the amount of $4,675.80 was issued.

Each of the foregoing payments is documented. It is also documented that the Bank of Lincolnwood account of Alex Martin was opened January 30, 1976, by the deposit of a check for $6,800, either drawn on the Dreyfus Liquid Asset Fund, payable to Ronald A. Martin and endorsed by him over to Alex J. Martin, or what is more probable, drawn on Ronald A. Martin's checking account at about the time that a check in the same amount drawn on the Dreyfus Liquid Asset Fund account had been deposited in Ronald A. Martin's account. Similarly, coincidental withdrawals of $3,375 and $5,000 from the Dreyfus account of Ronald A. Martin matched deposits of these amounts in Ronald Martin's checking account, and corresponded with checks of $3,375 and $4,675.80 drawn on Ronald's account and deposited in Alex' account and similar checks drawn on Alex' account and payable to Katz, Weiss Construction Co.

From the foregoing it readily is apparent that some mischief was afoot. Funds which had been in Ronald Martin's account with Dreyfus were used to provide the down payment for the condominium and had gone through a process of "laundering." The debtor does not offer any explanation for why the efforts were made to disguise the flow of funds. He does contend, however, that the money was Alex' money which had been invested in Ronald's account at the Dreyfus Fund.

The Dreyfus Fund account itself is difficult to square with conventional attitudes concerning finance. The account was opened in the name of Ronald A. Martin on August 22, 1975 with an initial deposit of $55,650, which Ronald Martin testified was the proceeds of the sale of his marital home as a result of a separation and impending divorce from his wife. The home was owned by his wife and Martin's sister. Martin said that the $55,650 was not a gift from his wife and sister but that it was pursuant to an oral agreement. When pressed as to the terms of the agreement Martin testified:

"The agreement was, sir, that my wife agreed to let me have the money.

Q ... completely unrestricted?

A Yes

Q and you could use this in any fashion that you wanted?

A That is correct, sir."

On October 20, 1975 a deposit of $15,000 was made into the Dreyfus account, which Martin testified represented cash given to him by his father, Alex, for the purpose of using as a down payment on the condominium. No explanation was offered for Alex' giving the money to Ronald three months before it was needed.

Alex Martin testified that during this period he frequently kept from $10,000 to $25,000 in cash in a safe deposit box, although his annual income was approximately $6,000 per year. In addition to an apartment which he owns in Chicago and in which he lives six months each year, he owns a condominium apartment in Florida in which he lives six months each year. Both Alex and Ronald testified that Alex took $15,000 in one hundred dollar bills

from his safe deposit box. Alex testified that he took it back to his apartment where he kept it in an unlocked drawer of his desk for several weeks before giving it to Ronald. Ronald kept the money for a while before investing it in the Dreyfus Liquid Asset Fund. On three separate occasions Ronald made withdrawals which were paid to the developer of the Touhy Avenue condominium.

Ronald lived in the condominium, paid all mortgage and maintenance charges, voted as a condominium owner and deducted the interest payments on his own federal income tax returns. His income was about $119,000 in the year of the condominium purchase, and there has been no suggestion that he was insolvent at that time.

Counsel for First Federated and the Trustee argue that the story told by Alex and Ronald Martin is not credible, that the Martins were attempting to conceal the source of the funds used to purchase the condominium, and that Ronald acted as though he owned the condominium; therefore, there was a secret agreement between Alex and Ronald for Alex to hold the property in the name of himself and his wife as nominees for Ronald. The Court agrees with everything except the conclusion. It is a possible explanation, but it is not the only possible explanation, nor even the most likely situation.

The most probable situation one might say based upon general observation is that Ronald was trying to conceal ownership of the condominium from his wife, who was in the process of obtaining a divorce from him. But there is not a shred of evidence to support that hypothesis. The only evidence as to the relationship between the two was Ronald's testimony that his wife had given him a large sum of money to use without any conditions. Concealment of the ownership from Internal Revenue Service is a possibility, but, again, there is no evidence of it.

If one accepts the testimony of the two Martins about their respective incomes, it would have been a friendly thing for Ronald to have bought the apartment for his parents as a gift, which in all probability would return to him in due course through their estates.

There is no evidence in the case of a secret agreement between Alex and Ronald respecting ownership of the condominium. The influence of a secret agreement is no stronger than the inference of a gift. There is not any substantial credible evidence to rebut a prima facie showing of a secret agreement, but the prima facie showing did not get made in the first instance.

The version which Alex and Ronald gave of the source of the $15,000 used to purchase the condominium as being one hundred dollar bills taken from Alex' safe deposit box and then left lying around Alex' apartment and then Ronald's apartment is not strong enough to outweigh the testimony of competent disinterested witnesses to another version, if there had been any, but there was none.

■ The Court finds that the source of the $15,000 down payment on the Touhy Avenue Condominium was Ronald Martin's account with Dreyfus Liquid Asset Fund. There is no credible proof that the account did not consist entirely of Ronald's money. No motive has been established for Ronald's using his parents as a nominee for his real estate ownership. Therefore, the Court makes no finding with respect to whether the transaction was one of gift or to conceal true ownership. Because the plaintiffs had the burden of establishing their proposition by a preponderance of the evidence and at best they have produced a draw, the Court finds that it has not been established that a secret agreement exists between Alex and Ronald Martin under which Alex will hold title to the Touhy Avenue Condominium for Ronald. Because it has not been established that Ronald owns the apartment, it similarly has not been established that Ronald failed to disclose his ownership, or concealed his ownership.

For purposes of impeachment plaintiff's attempted to introduce evidence of Ronald Martin's having been convicted of a federal crime in 1968 for which he was sentenced to one year's imprisonment. The evidence was rejected for two reasons under Rule 609 of the Federal Rules of Evidence:

1. Rule 609(b) sets forth a ten year period of limitation from the later of the date of conviction or release from confinement, except under unusual circumstances, and

2. Rule 609(c) excludes evidence of conviction "if (1) the conviction has been the subject of a pardon, annulment, certificate of rehabilitation, or other equivalent procedures based on a finding of the rehabilitation of the person convicted..."

This Court found that the present circumstances were not such as to extend the ten year limitation. With respect to Rule 609(c) this particular pardon did not, and the Court was advised that regularly federal pardons do not contain findings of rehabilitation. A more leisurely reading of subsection (c) than was possible at the trial suggests that the phrase "based on a finding of the rehabilitation of the person convicted" is not intended to qualify "pardon" or "annulment" but rather is meant to apply to less formal proceedings which include a finding of rehabilitation. In any event the Court's opinion of the credibility of Ronald Martin was so low that evidence of conviction of a crime probably would not have affected it.

The Court finds that the plaintiffs did not establish by clear and convincing evidence that a secret agreement exists between Alex J. Martin and Ronald A. Martin respecing the Touhy Avenue Condominium, much less what the terms of that agreement might be.

With respect to the adversary proceeding objecting to the discharge of the debtor, it is held that there has not been established by clear and convincing evidence that the debtor has improperly transferred or concealed any property within one year before the filing of the petition in this case nor is there clear and convincing evidence that he has failed to disclose in the schedule of assets made a part of his petition any property which he owns. With respect to the adversary proceeding relating to the dischargeability of the debt owed to First Federated Life Insurance Co., it is similarly ordered that there has not been established by clear and convincing evidence that the debtor has improperly transferred or concealed any property within one year before the filing of the petition in this case nor is there clear and convincing evidence that he has failed to disclose in the schedule of assets made a part of his petition any property which he owns.

Judgment for the defendant is ordered in each of the adversary proceedings consolidated here for trial and decision.